IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

04 AUG -2 AM 9:00

U.S. DISTRICT COURT
N.D. OF ALABAMA

Santae Hansen,                    )

    PLAINTIFF,                    )

VS.                               )        CV-03-H-1800-S

Sally Beauty Company, Inc.,       )

    DEFENDANT.                    )

ENTERED

AUG - 2 2004

## MEMORANDUM OF DECISION

The court has before it the June 1, 2004 motion of defendant
Sally Beauty Supply, Inc. (hereinafter "Sally's") for summary
judgment.  Contemporaneously with its motion for summary
judgment, Sally's filed a memorandum in support of its motion and
evidentiary submissions.[1]  Plaintiff responded with a memorandum
in opposition to Sally's motion for summary judgment on June 30,
2004 and filed evidentiary submissions with the court on June 23,
2004.[2]  And Sally's submitted a reply to plaintiff's response on
July 8, 2004.[3]  Pursuant to the Court's June 3, 2004 order, the

_____

[1] All of Sally's thirteen evidentiary submissions are
indexed within Doc. #21 and consist of declarations, deposition
excerpts, and exhibits to depositions.

[2] Plaintiff's three evidentiary submissions are indexed
within Doc. #25 and consist of three affidavits, one affidavit
each from Sarah Cockrun, Valencia Browder, and Karima Collins.

[3] By its July 16, 2004 order, the court granted Sally's
motion for leave to submit its reply brief beyond the June 30,

motion for summary judgment was deemed submitted, without oral
argument, on June 30, 2004.  Upon review of the parties'
submissions and for the reasons set out herein, the court
concludes that defendant's motion for summary judgment is due to
be granted.

## I. Procedural History

Plaintiff Santae Hansen commenced this action on July 15,
2003 by filing a complaint with this court.  (Doc. # 1.)  The
complaint articulates claims of racial discrimination in the form
of hostile work environment and disparate treatment under 42
U.S.C. § 1981 *et seq* and seeks equitable and legal relief against
the sole defendant, Sally's.  (Id.)  Specifically, the complaint
alleges that Hansen was subjected to racially hostile comments by
her supervisor, Patsy McDonald, and that Hansen was discharged
from her employment with Sally's because of her race - she is
black.  Sally's argues that no material facts are in dispute as
to either of plaintiff's claims, that plaintiff has failed to
establish a prima facie case as to either the hostile work
environment or the disparate treatment claim, and that as to all
of plaintiff's claims judgment should be granted in favor of
Sally's as a matter of law.  (See Doc. # 20.)

_____

2004 date of submission of the motion for summary judgment.
Sally's reply is therefore considered for purposes of the instant
motion.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. See id. at 323. Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. See id. at 324.

The substantive law will identify which facts are material and which are irrelevant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such

3

that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence

4

sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not
bear the burden of proof at trial can satisfy its initial burden
on summary judgment is to affirmatively show the absence of
evidence in the record to support a judgment for the non-moving
party on the issue in question.  This method requires more than a
simple statement that the non-moving party cannot meet its burden
at trial but does not require evidence negating the non-movant's
claim; it simply requires the movant to point out to the district
court that there is an absence of evidence to support the non-
moving party's case.  See Fitzpatrick, 2 F.3d at 1115-16.  If the
movant meets its initial burden by using this second method, the
non-moving party may either point out to the court record
evidence, overlooked or ignored by the movant, sufficient to
withstand a directed verdict, or the non-moving party may come
forward with additional evidence sufficient to withstand a
directed verdict motion at trial based on the alleged evidentiary
deficiency.  However, when responding, the non-movant can no
longer rest on mere allegations, but must set forth evidence of
specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996)
(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561
(1992)).

### III. Relevant Undisputed Facts[4]

As a preliminary matter, the court observes that the plaintiff concedes that the undisputed facts of this case are as stated in Sally's motion for summary judgment, with one exception.  (See Doc. #20 at Part II "Statement of Facts".)  The plaintiff alleges that the evidence does not support the fact that in November and December of 2002, the plaintiff was "absent"[5] from work on four occasions.  (See Doc. #26 at 3.)[6] However, plaintiff offers no evidence whatsoever to contradict Sally's substantial evidence of Hansen's poor attendance record and the written reprimands and warnings that ultimately led to her discharge.  (See Def.'s Evid. Sub. # 6-9.)  Plaintiff's mere assertion that this fact is not supported by the evidence is

───────────────

[4] If facts are in dispute, they are stated in the manner most favorable to the plaintiff.  See Fitzpatrick, 2 F.3d at 1115.

[5] Sally's defines an "occasion of absence" as anytime an employee is absent, tardy, or otherwise works less than his assigned hours.  (Exh. 2 to Hansen Depo. at 15; Exh. 3 to Hansen Depo. at 8-9.)

[6] The court notes that plaintiff's counsel has a rather unique manner of dealing with the "Statement of Facts" in plaintiff's response to the motion for summary judgment.  As the court deciphers it, the plaintiff has enumerated each sentence of Part II ("Statement of Facts") of Sally's brief in support of its motion and then "Admitted" each sentence to be undisputed with the exception of what plaintiff has enumerated as sentence "19". To this sentence the plaintiff responds "Denied.  Unsupported by the evidence."  Hence the court's finding, above, that this is the only fact that the plaintiff alleges is in dispute. (See Doc. #26 at 3.)

insufficient to give rise to an inference in her favor, particularly where the record categorically supports the fact that Hansen was absent from work on a number of occasions in the months leading up to her discharge.

Additionally, plaintiff's three evidentiary submissions are inapposite to the issue of attendance.  First, the affidavit of Sarah Cockburn does not even traverse the issue of plaintiff's attendance at work.  (See Doc. # 25 at Aff. of Sarah Cockburn.) Second, the affidavit of Valencia Browder, which contains statements regarding Patsy McDonald and others at Sally's, would be inadmissable at trial as irrelevant.  The plaintiff was terminated in May 2003, Browder did not begin her employment with Sally's until January of 2004 - nearly eight months after Browder's discharge.  (Doc. # 25 at Aff. of Valencia Browder; Doc # 1 at ¶ 10.)  The events observed by Browder are simply too remote in time to the subject matter of this lawsuit to be relevant.  Finally, the affidavit of Karima Collins contains nothing but irrelevant facts and hearsay.  The affidavit states that Collins was once employed by Sally's and contains Collins' reports of statements made to her by Patsy McDonald.[7]  (Doc. # 25

---

[7] McDonald told Collins that after being terminated from Sally's, Hansen had filed a lawsuit against Sally's.  Collins says that McDonald characterized Hansen's claim as: "[Hansen] was suing Sally Beauty Supply because [McDonald] had called [Hansen] a 'nigger'."  (Doc. # 25 at Aff. of Karima Collins.)  Curiously, the pleadings do not reflect such a claim, nor could the record support it.

at Aff. of Karima Collins.)   The only relevant purpose for
offering Collins' recitation of the second hand statement would
be as evidence of the truth of the matter asserted by the out of
court declarant.   This is a textbook example of hearsay.   Thus,
the statements contained within Collins' affidavit would not be
admissible at trial and will not be considered for purposes of
defendant's motion for summary judgment.   Therefore, for purposes
of summary judgment, the court finds the undisputed facts to be
as they are stated in defendant's brief.   And for the sake of
convenience, those facts are summarized here.

Plaintiff, Hansen, began her employment with Sally's, a
beauty supply distributor, in April 1999 as a Sales Associate.
In late 1999, Hansen was promoted to Assistant Manager.   (Doc. #
21 at Exh. 2 ("Hansen Depo.") at 33; Doc. # 21 at Exh. 1 ("Miller
Dec.") at ¶ 7.)   At Sally's, an Assistant Manager is an hourly
employee.   (Miller Dec. at ¶ 7.)

In September of 2002, Patsy McDonald was transferred from
another Sally's location to become the new Store Manager at
Hansen's store.   (Miller Dec. at ¶ 8; Doc. # 21 at Exh. 3
("McDonald Dec.") at ¶ 2.)   As Store Manager, McDonald was
Hansen's immediate supervisor.   McDonald was a much more
demanding supervisor than the previous Store Manager had been.
McDonald prepared daily task lists for each employee to complete.
(Hansen Depo. at 175.)   She spoke in a disrespectful manner to

8

all of the employees.  (Id. at 175.)  And Hansen states that both
white and black employees complained about McDonald's management
style.  (Id. at 96.)

On January 2, 2003, Hansen received a written warning
concerning four "occasions of absence" from McDonald.  (Doc. # 21
at Exh. 6.)  Sally's attendance policy states that two occasions
of absence in a four month period are excessive and that
excessive absences may lead to an employee's discharge.  (Doc. #
21 at Exh. 4 at 15; Doc. # 21 at Exh. 5 at 8-9.)  Hansen's
absenteeism continued on past the January 2, 2003 warning and she
received a termination warning from McDonald on March 29, 2003.
(Doc. # 21 at Exh. 7.)  Hansen admits that she was occasionally
late for work, but denies receiving either the January or the
March warning.  (Hansen Depo. at 198-99.)  On May 2, 2003, Hansen
was discharged by Sally's due to unacceptable attendance.  (Doc.
# 21 at Exh. 9.)

McDonald had conferred with her District Manager, Sharon
Miller - who happens to be black - and Sally's Human Resource
Manager, Kerrie Loyde - who happens to be white - throughout
Hansen's warnings and termination.  (Miller Dec. at ¶ 11; Doc. #
21 at Exh. 10 ("Loyde Dec.") at ¶ 3.)  McDonald's decision to
terminate Hansen received the approval of both Miller and Loyde
as is required by Sally's Personnel Procedures.  (Miller Dec. at
¶ 12; Miller Dec. at Exh. 1; McDonald Dec. at ¶ 4.)

Sally's did not hire anyone to fill the Assistant Manager position from which Hansen was discharged because the volume of business at that store had decreased due to a new store opening in the same area.  (Miller Dec. at ¶ 13.)  However, a black woman, Yvonne Adams, who was hired several weeks before Hansen was discharged, assumed nearly all of Hansen's former duties.  (Miller Dec. at ¶ 13; McDonald Dec. at ¶ 6.)

Hansen has alleged that she was harassed by McDonald from the time McDonald became the manager of Hansen's store until Sally's discharged her in May 2003.  Hansen states that McDonald told her that she would be fired if she did not do what McDonald asked of her.  (Hansen Depo. at 93, 177.)  Hansen testified that McDonald "fussed" at Hansen about the tasks assigned to her on the daily duty sheets.  (Id. at 97.)  Hansen says that she heard from other employees that McDonald complained to white employees about the black employees.  (Id. at 98.)  Plaintiff also claims that she heard from other employees that McDonald told them that Hansen was not really the Assistant Manager of the store.  (Id. at 107.)  Sherry Smith, a sales associate, told Hansen that McDonald did not like black people.  (Id. at 99, 187.)  Another sales associate, Alandra Hill, told Hansen that McDonald said that she could not stand "nasty black bitches" because they used the restroom and did not clean it up.  (Id. at 101-03, 222.)  Hansen testified that she was assigned to clean the restroom the

10

following day.  (Id.)  But she also states that all employees,
both black and white, were assigned to clean the restroom and
that McDonald also cleaned it.  (Id.)  McDonald allowed white
employees who smoked to take cigarette breaks and Hansen does not
smoke. (Id. at 210-11.)  Once, McDonald did not immediately allow
Hansen, who has diabetes, to eat a snack because her blood-sugar
was low.  (Id. at 203-209.)[8]

## IV.  Applicable Substantive Law and Analysis

As noted, the plaintiff asserts claims for both hostile work
environment racial harassment and disparate treatment on the
basis of race.  Each claim is discussed separately below.

### A.  Abusive Work Environment Race Discrimination

Plaintiff first asserts a claim of abusive work environment
racial harassment, as that environment was allegedly created by

---

[8] In addition, Hansen complains of other incidents of
mistreatment by McDonald.  But in each instance, Hansen
explicitly states that she has no evidence that the mistreatment
was related to her race.  Among this category of claims Hansen
states that (1) when she sustained an on-the-job injury, McDonald
refused to provide the necessary paperwork (Hansen Depo. at 94);
(2) McDonald told other employees that Hansen was lying about her
on-the-job injury (id.); (3) when Hansen's doctor released her to
return to work, McDonald immediately placed her on the schedule
and called Hansen's father's house when Hansen failed to turn up
for work and Hansen treated her badly when she did turn up (id.
at 115-17); (4) McDonald gave a termination warning to Hansen on
September 24, 2002 for unprofessional and deviant behavior (id.
at 151; id. at Exh. 4); (5) McDonald gave a written warning to
Hansen on January 5, 2003 for failing to take a required lunch
break (id. at Exh. 6; id. at 155.); and (6) on March 29, 2003,
McDonald had a discussion with Hansen regarding the proper way to
handle paperwork.  (Id. at Exh. 7; id. at 156.)

the actions of a supervisor.  Title VII provides that an employer shall not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's *race*, color, religion, sex, or national origin . . ." 42 U.S.C. § 2000e-2(a)(1) (1994) (emphasis added).  Title VII has been interpreted to specifically allow claims for racial harassment to rest upon the theory of an abusive work environment.[9]  See, e.g., Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998).  A plaintiff attempting to show that she has been subjected to an abusive work environment must prove a number of elements to establish the claim.  These elements include proof that: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of, as relevant here, was based upon race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5)

---

[9] The Ellerth and Faragher decisions indicate that courts should no longer use the hostile work environment label in analyzing whether an employer should be held liable on a Title VII claim in which no tangible adverse employment decision has been made.  See Ellerth, 524 U.S. at 753, 765; Faragher, 524 U.S. at 807.  Instead, in analyzing claims that heretofore traditionally would have been labeled "hostile work environment" claims, courts should now ask only whether the conduct complained of "is sufficient to constructively alter an employee's working conditions."  Frederick v. Sprint/United Management Co., 246 F.3d 1305, 1311 (11th Cir. 2001).

there exists a basis for holding the employer liable.[10]  <u>See</u>
<u>Henson v. City of Dundee</u>, 682 F.2d 897, 903-04 (11th Cir. 1982);
<u>see also</u> <u>Mendoza v. Borden, Inc.</u>, 195 F.3d 1238, 1245 (11th Cir.
1999).

In order for a plaintiff to establish a prima facie case of
abusive work environment harassment actionable under Title VII,
the incidents of harassment must be "so 'severe or pervasive' as
to 'alter the conditions of employment and create an abusive
working environment . . .'"[11]  <u>Faragher</u>, 524 U.S. at 786 (citing
<u>Meritor</u>, 477 U.S. at 67); <u>see also</u> <u>Edwards v. Wallace Community</u>
<u>College</u>, 49 F.3d 1517, 1521 (11th Cir. 1995).  Title VII is not
"a general civility code" nor does it protect against "the
ordinary tribulations of the workplace, such as the sporadic use
of 'abusive language, [race]-related jokes, and occasional
teasing.'" <u>Faragher</u>, 524 U.S. at 788.  Infrequent or "isolated
incidents (unless extremely serious) will not amount to
discriminatory changes in the 'terms and conditions of

---

[10] Where a plaintiff fails to make the prima facie showing
of an abusive work environment, the court need not reach the
issue of employer liability.  And even where the plaintiff
successfully makes a prima facie showing of harassment involving
no tangible employment action, the defendant/employer is not
summarily liable.

[11] Although both <u>Faragher</u> and <u>Meritor</u> involved claims for
sexual harassment, not racial harassment as alleged in this case,
the Supreme Court has noted that "[even though] racial and sexual
harassment will often take different forms, and standards may not
be entirely interchangeable, we think there is good sense in
seeking generally to harmonize the standards of what amounts to
actionable harassment."  <u>Faragher</u>, 524 U.S. at 787 n.1.

employment'" to constitute a violation of Title VII.[12]  Id.  The severity of the behavior must be evaluated both objectively and subjectively in light of all the circumstances,[13] see Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998), and only the most extreme harassing conduct will be found to violate Title VII.  See Faragher, 524 U.S. at 788; Oncale, 523 U.S. at 81-2.

The standard for a racially hostile environment is high: "not all racial slurs rise to the level of a Title VII violation."  Johnson v. Bunny Bread Co., 646 F.2d 1250, 1257 (8th Cir. 1981).  "The racial slurs allegedly spoken . . . [have] to be so 'commonplace, overt and denigrating that they create[] an atmosphere charged with racial hostility.'"  Edwards, 49 F.3d at 1521 (citing E.E.O.C. Beverage Canners, Inc., 897 F.2d 1067, 1068 (11th Cir. 1990)).  The Supreme Court has noted that the "'mere utterance of an . . . epithet which engenders offensive feelings in an employee,' does not sufficiently affect the conditions of employment to implicate Title VII."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor, 477 U.S. at 67).  Factors to be considered include the frequency of the racial

---

[12] However, the determination as to whether the harassment was sufficiently severe or pervasive should not be based solely on the number of incidents alleged.  See Vance v. Southern Bell, 863 F.2d 1503, 1510 (11th Cir. 1989).

[13] "The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'"  Mendoza, 195 F.3d at 1246.

14

terms, whether the speaker directed the comments to the plaintiff,[14] and whether the remarks were made accidentally and/or as part of casual conversation. See Bunny Bread, 646 F.2d at 1257. Also relevant is whether the utterance was made in the presence of others so as to further humiliate the employee. Racial slurs that are "largely the result of individual attitudes and relationships . . . certainly [are] not to be condoned, [but nonetheless] do not amount to violations of Title VII." Id. Other factors to consider are: the severity of the conduct, whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's job performance." Gupta v. Florida Bd. of Regents, 212 F.3d 571, 582 (11th Cir. 2000).

The record in this case simply does not reflect an atmosphere even remotely close to what is required to establish a prima facie "hostile environment" claim. Even if the court were to consider the entirety of the contents of the three affidavit's submitted by the plaintiff, the record does not reflect that McDonald or Sally's in any way whatsoever created an "atmosphere charged with racial hostility." Instead, the record reflects that Hansen was merely subjected to the "the ordinary tribulations of the workplace." The court has no doubt that

---

[14] Remarks that were not directed at the plaintiff may still contribute to the hostile environment if the plaintiff was aware of that conduct while actually employed by defendant. See Edwards, 49 F.3d at 1522.

McDonald's arrival as the new store manager was something of a
regime change for all the employees.  McDonald was clearly more
demanding on the employees than the previous manager.  But the
record demonstrates that she was more demanding than the previous
manager on everyone, black and white.  Therefore, Hansen has
failed to satisfy her prima facie burden and the defendant's
motion for summary judgment as to plaintiff's racially abusive
environment claim is due to be granted.

**B.   Racially Disparate Treatment**

In employment discrimination cases, courts have long
distinguished between "disparate treatment" and "disparate
impact" as theories of liability.  Hazen Paper Co. v. Biggins,
507 U.S. 604,609, 113 S. Ct. 1701, 1705 (1993).  Disparate
treatment occurs when "[t]he employer simply treats some people
less favorably than others because of their race, color, religion
[or other protected characteristics]."  Hazen Paper, 507 U.S. at
609, 113 S. Ct. at 1705.  Disparate impact, by contrast, arises
when "employment practices ... are facially neutral in their
treatment of different groups but ... in fact fall more harshly
on one group than another and cannot be justified by business
necessity."   Id.  Plaintiff articulates a disparate treatment
claim predicated upon her claim that she was discharged from her
employment with Sally's on the basis race.

The court looks to McDonnell Douglas v. Green, 411 U.S. 792

16

(1973), for the burden-shifting framework with which to evaluate Title VII claims that are based upon circumstantial evidence of discrimination.[15]  <u>Combs v. Plantation Planters</u>, 106 F.3d 1519, 1527-28 (11th Cir. 1997).  As dictated by the framework, plaintiff must first, bearing a burden of persuasion, establish a prima facie case of discrimination.  <u>Id</u>.  On a claim of discriminatory discharge, a plaintiff may establish a prima facie case by showing that she was (1) a member of the protected class, (2) that she was qualified for the job from which she was discharged, and (3) that the misconduct for which she was discharged was nearly identical to that engaged in by an employee outside the protected class whom the employer retained.  <u>Williams v. Motorola, Inc.</u>, 303 F.3d 1284, 1293 (11th Cir. 2002) <u>citing</u> <u>Nix v. WLCY Radio</u>, 738 F.2d 1181, 1185 (11th Cir. 1984).  And although a plaintiff's burden in establishing a prima facie case

---

[15] A plaintiff may also seek to assert a claim of discrimination by offering direct evidence of discrimination. Direct evidence is "evidence which, if believed, would prove the existence of a fact without inference or presumption." <u>Carter v. City of Miami</u>, 870 F.2d 578, 582 (11th Cir. 1989). "Only the most blatant remarks, whose intent could be nothing other than discrimination on the basis of age, constitute direct evidence of discrimination." <u>Earley</u>, 907 F.2d at 1081 (11th Cir. 1990). Plaintiff has provided no direct evidence that the Board had a discriminatory intent in choosing to not hire Collins.  Nor has plaintiff provided any evidence that defendant ever made reference to race in denying Collins either of the positions still at issue in this case.  Because plaintiff does not cite to any comment or even a suggestion by defendant (or any of its employees) that race was a factor in not hiring plaintiff, plaintiff is barred from advancing his case on a direct evidence basis.

is light, summary judgment against the plaintiff is, nonetheless, appropriate if she fails to satisfy any one of the elements of a prima facie case.  Id.

If the plaintiff successfully establishes a prima facie case, a presumption of discrimination is created and the focus of the enterprise then shifts to the defendant.  Bearing only a burden of production, the defendant is called on to articulate a legitimate, nondiscriminatory reason for the challenged employment action.  See Combs, 1056 F.3d at 1528 (holding that the employer "need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.")

Having articulated one or more nondiscriminatory reasons for the adverse employment action at issue, the presumption of discrimination is destroyed.  Id.  Then the plaintiff has the opportunity to present evidence, "including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  Id. (citations omitted).  But if the plaintiff fails to present sufficient evidence to create a genuine issue of material fact as to whether each of the defendant's articulated reasons is pretextual, then the employer

18

is entitled to summary judgment on the claim.  See id.[16]

For the sake of brevity, the court will assume that Hansen
has established a prima facie case.[17]  But the defendant has put
forward substantial evidence of a legitimate non-discriminatory
reason for Hansen's termination.  She was late for work too

---

[16] "Although the defendant is entitled to summary judgment
in its favor if the plaintiff does not proffer sufficient
evidence of pretext, the converse is not necessarily true.  If
the plaintiff does proffer sufficient evidence that the
defendant's stated reasons are pretextual, the plaintiff still
may not be entitled to take his case to a jury.  In Reeves, which
dealt with Rule 50, judgment as a matter of law, the Supreme
Court stated: '[A] plaintiff's prima facie case, combined with
sufficient evidence that the employer's asserted justification is
false, may permit the trier of fact to conclude that the employer
unlawfully discriminated.  This is not to say that such a showing
by the plaintiff will always be adequate to sustain a jury's
finding of liability.  Certainly there will be instances where,
although the plaintiff has established a prima facie case and set
forth sufficient evidence to reject the defendant's explanation,
no rational factfinder could conclude that the action was
discriminatory.'  Chapman 229 F.3d at 1025, n11 quoting Reeves
120 S.Ct. at 2109.
    While the statement above was made in the context of a Rule
50, not a Rule 56, determination the Supreme Court said that the
"standard for granting summary judgment mirrors the standard for
granting judgment as a matter of law such that the inquiry under
each is the same." Id.

[17] But the court's assumption comes as something of a gift
to plaintiff.  A substantial argument could be made that the
plaintiff has not met her burden of production as to the fact
that the conduct in which she was engaged was nearly identical to
that engaged in by an employee outside the protected class whom
the employer retained.  See generally, Nix, 738 F.2d at 1185.
Indeed, no comparator has been identified by plaintiff.  Nor has
she produced evidence that she was replaced by someone outside of
her protected class.  Id.  Evidence to support either contention
is absent in the record.  Indeed, the record reflects that
Hansen's position was eliminated and her duties were handed over
to another black employee who was hired before Hansen's
discharge.

often.   The undisputed evidence reflects that she violated
Sally's absenteeism policy at the end of 2003.   The record also
evidences several written warnings and reprimands that Hansen
received in the months prior to her discharge.   These documents
reveal that not only was Hansen tardy to work, but she was also
insubordinate.   Moreover, the decision to fire Hansen was not
McDonald's alone, but was also agreed upon by a white District
Manager and a black Human Resources Director. Hansen offers
absolutely nothing to contradict this evidence aside from her
bald assertion that they are false.   And that bald assertion is
simply not sufficient to permit a reasonable factfinder to
conclude that the reasons given by the employer were not the real
reasons for the adverse employment decision.[18]   On this record
the only conclusion a reasonable factfinder could reach is that
Hansen was often late, that McDonald was a tough manager who did
not tolerate repeated tardiness, and that after several warnings,
Hansen was terminated because she continuously failed to show up
to work on time or otherwise follow the direction of her
supervisor.   Additionally, the plaintiff has presented no
evidence that a person outside her protected class was treated
differently.   Therefore, as to plaintiff's disparate treatment
claim, the defendant's motion for summary judgment is due to be

---

[18] The court notes that it would reach the same conclusion,
even if it were to consider the entirety of the contents of the
three affidavits submitted by the plaintiff.

granted.

In summary, the Court finds that no material issue of fact remains and that defendant Sally Beauty Company, Inc. is entitled to judgment as a matter of law as to all of the claims.  A separate order will be entered to this effect.

DONE this _2nd_ day of August, 2004.

_____
SENIOR UNITED STATES DISTRICT JUDGE

21